Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3740 | **DATE** | 11/9/2001 |
| **CASE TITLE** | Guzell vs. Randall Hiller | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant Hiller's motion for summary judgment is granted (25-1). Judgment is entered in favor of defendant Hiller.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 1 6 2001 date docketed | 31 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 NOV 15 PM 3:59 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED

NOV 16 2001

| | |
|---|---|
| LEONARD GUZELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | NOV 1 6 2001 |
| v. ) | No. 99 C 3740 |
| ) | |
| RANDALL HILLER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Leonard Guzell brought this lawsuit pursuant to 42 U.S.C. § 1983 against Chicago police officer Randall Hiller[1] claiming that he was falsely arrested at his travel agency on July 9, 1998. Hiller has moved for summary judgment, contending that he had probable cause to arrest Guzell or that, at a minimum, he is entitled to qualified immunity for his actions. For the reasons stated below, the Court grants Hiller's motion for summary judgment.

### Facts

Guzell filed this action in June 1999 claiming his civil rights were violated when he was arrested at his office in July 1998. In August 1999, defendants brought a motion to dismiss the case pursuant to Rule 12(b)(6), which Judge Alesia granted in November 1999. The

---

[1] The complaint originally included Officer Steven Gawlik as a defendant. However, the claims against Gawlik were dismissed with prejudice on September 30, 2001 after discovery revealed that he was not present for the arrest.

Seventh Circuit reversed the decision in August 2000, *see Guzell v. Hiller*, 223 F.3d 518 (7th Cir. 2000), finding that dismissal on probable cause grounds was premature. Hiller now seeks summary judgment.

The events that lead us to this point are largely undisputed. When Agnieszka Bacik was a child, her mother immigrated to the United States from Poland. Sometime in 1986, her mother and stepfather contacted Guzell, a travel agent, seeking assistance in bringing Bacik and her sister to the United States as permanent residents. Bacik's parents paid Guzell a sum of money and in return, Guzell obtained permanent resident passports for the girls and escorted them from Poland to the United States. Upon reuniting the family, Guzell demanded an additional $300 from the parents and informed them they he would need to hold on to the girls' passports until they paid him. The parents, believing that they had already paid Guzell all that he was owed, left the airport with their daughters without paying the additional money or obtaining the passports.

Approximately twelve years later, Bacik wanted to travel to Poland to visit her sister but was informed by the Polish Consulate that she would need to turn over her original, expired passport in order to obtain a new passport. Accordingly, on July 8, 1998, Bacik called Guzell and requested her passport. When Bacik went to Guzell's travel agency to retrieve the passport the next day, Guzell told her that she would have to pay him the $300 first. Bacik refused and called the police. When the police (not officer Hiller) arrived, Guzell informed them that he and Bacik had a monetary dispute. The officers told Bacik there was nothing they could do and left.

Bacik, believing that she had not been given a chance to explain the circumstances

of her dispute with Guzell, went to a nearby police station and filled out a police report. Armed with the report, she returned to Guzell's agency and again demanded her passport. When Guzell refused, Bacik again called the police. This time, Officer Hiller responded to Bacik's call. When Hiller arrived, Bacik gave him the police report she had previously filled out and told Hiller that Guzell refused to give her the passport. Bacik further explained to Hiller that Guzell claimed he was owed money by the persons who sought his help in bringing her to the United States. She denied that she owed Guzell any money.

Hiller then spoke with Guzell to get his side of the story. Guzell informed the officer that he did indeed have Bacik's passport but that he was not going to give it to her because money was owed to him for services rendered and for "renewal" of the passport. Hiller testified that he believed that Guzell could not hold Bacik's passport "hostage" because the passport, as a piece of identification unique to Bacik, had no value to him. Guzell persisted in refusing to give up the passport.

Hiller subsequently contacted the Police Department's Area 5 Property Crimes division and spoke to Detective Montello in an effort to confirm his belief that Guzell could not keep Bacik's passport as security and was committing a theft. Hiller has testified that Detective Montello confirmed that Guzell should be arrested if he continued to refuse to give the passport to Bacik.[2] According to Hiller, he again told Guzell he could not hold the passport and Guzell again refused. Hiller arrested Guzell for theft and drove him to the police station, where he was

---

[2] We reject Guzell's contention that Hiller's testimony regarding what Detective Montello told him should not be considered because it is inadmissible hearsay. Detective Montello's comments have not been submitted for their truth but rather to show Hiller's state of mind and the reasonableness of his belief that an arrest was proper. *See Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000).

processed and released on bond. The theft case against Guzell was ultimately dismissed.

## Discussion

Hiller argues that he had probable cause to arrest Guzell or that, at the least, he is entitled to qualified immunity. These inquiries are closely related. Probable cause to arrest exists if "at the moment the arrest was made ... the facts and circumstances within [his] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the arrestee had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Even if probable cause did not exist, an arresting officer is immune from suit if a reasonable officer *could have* believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. *Id.* at 227. *See also Marks v. Carmody*, 234 F.3d 1006, 1009 (7th Cir. 2000) (the "objective question [in a qualified immunity inquiry is] whether a reasonable officer ... would have known that the law as applied to these circumstances clearly established that an arrest would be unlawful for lack of probable cause"). As the Supreme Court made clear in *Hunter*, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter*, 502 U.S. at 229 (citing *Malley [v. Brigg]*, 475 U.S. 335, 343 (1986)).

Applying these principles, we find that Hiller is entitled to summary judgment because he had at least "arguable" probable cause and is thus entitled to qualified immunity for his actions.

-4-

*Probable Cause*

The Seventh Circuit has defined the relevant inquiry in this case with respect to probable cause: "whether the police had reason to believe that Guzell was treating the passport as if he owned it. The answer is yes if they reasonably believed that he had no color of right to withhold possession of the passport from Bacik." *Guzell v. Hiller*, 223 F.3d at 522. The Seventh Circuit further stated that probable cause may exist if Hiller "reasonably believed that a passport [cannot be pledged] and that this is so clear that Guzell was unlikely to have a bona fide belief to the contrary." *Id.*

There is no doubt that Guzell, prior to Hiller's arrival at his agency, thought he could keep the passport until Bacik paid the money her parents allegedly owed him. It seems equally clear that Hiller believed that Guzell could not hold the passport for security – an understanding that was reinforced by Hiller's conversation with Detective Montello. But the probable cause issue as framed by the Seventh Circuit is whether Hiller's view was so clearly correct that Guzell's contrary view was unlikely to be held in good faith. The evidence does not allow the Court to make this determination as a matter of law. Hiller's deposition testimony indicates that *he* thought that Guzell had a good faith belief that he could keep the passport as security. *See* Hiller Deposition at 28. The only thing that Hiller cites as undercutting this is his own statement to Guzell that the latter's belief was not well-founded, *see, e.g., id.,* which by itself is not enough to undermine Guzell's *bona fides*, at least not as a matter of law. The Seventh Circuit noted that at the motion to dismiss stage, the record was "entirely consistent with the defendant's having no ground for doubting Guzell's good faith in claiming a security interest in Bacik's passport." *Guzell*, 223 F.3d at 522. No evidence undermining that conclusion has

-5-

since come to light. Accordingly, we cannot find that probable cause existed as a matter of law.

*Qualified Immunity*

Although the evidence does not establish probable cause as a matter of law, it is sufficient to entitle officer Hiller to qualified immunity under *Hunter v. Bryant*. At issue is whether a reasonable police officer *could* have believed, even if mistakenly, that probable cause existed, *Hunter*, 502 U.S. at 227-28; in other words whether there was what the Seventh Circuit and other courts have referred to as "arguable probable cause," *e.g.*, *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).

Under Illinois law, a person commits "theft when he knowingly ... [o]btains or exerts unauthorized control over property of the owner ... and [i]ntends to deprive the owner permanently of the use or benefit of the property". Arguable probable cause existed because the elements of the offense of theft arguably were met based on the information communicated to Officer Hiller. It is undisputed that Bacik informed Hiller that Guzell was refusing to return her passport based on a dispute Guzell had with a third party; that she did not owe Guzell any money; and that Guzell had no right to retain her passport (*i.e.*, that she had not authorized him to retain it). On these facts, a reasonable officer could believe, even if mistakenly, that Guzell was exerting unauthorized control over Bacik's property with the intent to deprive her of it permanently. Hiller's discrediting of Guzell's claim of good faith might have been mistaken, but under the circumstances it was not unreasonable.

Nor is there anything to suggest that Hiller's actions fall into the category of being "plainly incompetent," or that Hiller knowingly violated the law. *See Hunter*, 502 U.S. at 229; *Maltby v. Winston*, 36 F.3d 548, 558 (7th Cir. 1994). Guzell argues that the fact that Hiller

"drove him around" rather than taking him directly to the police station (a claim disputed by Hiller) suggests that Hiller realized that he did not have probable cause but instead was simply using the threat of arrest to frighten Guzell into giving up the passport. The Court disagrees. Even taking Guzell's version as true, the fact that Hiller might have given him one last chance to avoid arrest does not begin to suggest that Hiller did not reasonably believe that he had probable cause.

### Conclusion

For the reasons stated above, Defendant Hiller's motion for summary judgment [docket item # 25] is granted. The Clerk is directed to enter judgment in favor of defendant Hiller.

Dated: November 9, 2001

MATTHEW F. KENNELLY
United States District Judge